AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 10 2015

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

a white 2014 Ford Explorer with New Mexico government license plate 90563 and vehicle identification number 1FM5K8AR3EGB19778

Case No. 15mr128

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
a white 2014 Ford Explorer with New Mexico government license plate 90563 and vehicle identification number 1FM5K

located in the _____ District of \_\_\_\_\_New Mexico\_\_\_\_\_ , there is now concealed *(identify the person or describe the property to be seized)*:


The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 242, 641, 1951(a) | |
| 21 U.S.C. 846 | |

The application is based on these facts:
See affidavit of Special Agent Karen Greene, attached hereto and incorporated by reference herein

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of \_\_\_\_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Karen Greene, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 10, 2015

City and state: Albuquerque, NM

*Judge's signature*

KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE
*Printed name and title*

SEALED

DISTRICT OF NEW MEXICO
ALBUQUERQUE, NEW MEXICO

**AFFIDAVIT**

I, Karen Greene, Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, having been duly sworn, state:

**A.     Introduction**

1.     I make this affidavit in support of an application by the United States pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the automobile described in Attachment A, a marked Colfax County Sheriff's Department automobile, specifically a white 2014 Ford Explorer with New Mexico government license plate 90563 and vehicle identification number 1FM5K8AR3EGB19778 (hereinafter, the "Subject Vehicle").

2.     As set forth herein, there is probable cause to believe that searching the Subject Vehicle will lead to evidence of violations of 18 U.S.C. 242, deprivation of civil rights; 18 U.S.C. § 641, theft of government property; 18 U.S.C. § 1951(a), extortion under color of official right; and 21 U.S.C. § 846, attempt to possess with intent to distribute cocaine, including the evidence described in Attachment B.

**B.     Training and Experience**

3.     I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), and am currently assigned to the Albuquerque Division Santa Fe Resident Agency, and have investigative responsibilities including white collar crime and public corruption. I have been an SA with the FBI for ten years. The information set forth in this affidavit was derived from my own investigation and/or communicated to me by other employees of the FBI, members of New Mexico State Police ("NMSP"), other law enforcement agencies, and from records and

1

SEALED

documents that I, and others, have reviewed. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to demonstrate probable cause for the issuance of the requested search warrant.

### C. Probable Cause

4. In July 2014, I received information from the New Mexico State Police (hereinafter, NMSP"), Investigations Bureau, about a traffic stop at approximately 9:31 p.m. on June 25, 2014, on Interstate 40 near mile marker 82 in Cibola County, New Mexico. NMSP provided the FBI with a report by Patrolman Joseph Garcia documenting this traffic stop. According to the report, Patrolman Garcia performed a traffic stop of a green 1995 Nissan sedan with Arizona license plate BFS7600 occupied by two males after observing the Nissan following another vehicle too closely. During the traffic stop, Patrolman Garcia identified the driver as Luis Eduardo Felix (hereinafter, "Felix") and the passenger as Juan Carlos Barbosa-Castaneda ("Barbosa-Castaneda").

5. Felix told Patrolman Garcia that Felix and Barbosa-Castaneda had been previously stopped by another law enforcement officer near the New Mexico-Colorado border after entering New Mexico. Felix stated that they had purchased marijuana from a dispensary while in Colorado. Barbosa-Castaneda told Patrolman Garcia that the officer who performed the previous traffic stop was driving a new, white Ford Explorer with blue writing on the side. Felix further stated that the officer in the previous traffic stop had searched their vehicle, seized the marijuana, and taken more than ten thousand dollars ($10,000) in cash from them and did not provide them a receipt for this seizure. Felix further stated to Patrolman Garcia that the officer in the previous traffic stop gave the motorists six hundred dollars ($600) back in order to pay for

their travel expenses on their way back to Arizona. Felix further stated that, in addition to not being given a receipt documenting the cash seizure, he was not cited for a traffic violation during this stop and search. Felix further stated that the officer had mentioned something about a "DEA" investigation.

6. According to Patrolman Garcia's report, upon receiving this information, he did some research to determine who made the previous traffic stop, including placing a phone call to the dispatcher for the Raton, New Mexico Police Department. The dispatcher advised Patrolman Garcia that Deputy Vidal Sandoval (hereinafter, "Sandoval") of the Colfax County Sheriff's Office had stopped a vehicle with Arizona license plates on Interstate 25 at approximately 5:00 p.m. Patrolman Garcia asked the dispatcher to ask Sandoval to call Patrolman Garcia on his cellular phone. According to Patrolman Garcia's report, he received a call from a male identifying himself as Sandoval soon thereafter. Sandoval stated, in sum and substance, that he had stopped a green vehicle occupied by two males. Patrolman Garcia asked Sandoval whether he took money from the vehicle. Sandoval responded, in sum and substance, that he had not.

7. Upon receiving the information described above, FBI and NMSP initiated an undercover investigation. I have participated in this investigation. Captain Dale Wagoner of NMSP has also participated in this investigation.

8. According to Captain Wagoner, on December 14, 2014, he conducted surveillance at 324 East 8th Street, Cimarron, New Mexico. This is Sandoval's home address according to public records concerning his (unsuccessful) candidacy for Colfax County Sheriff in 2014. During the surveillance, Captain Wagoner observed the Subject Vehicle, i.e., an official Colfax County Sheriff's Office vehicle, specifically a newer model white Ford Explorer, parked in the driveway. Notably, this description of Sandoval's patrol vehicle matched that provided by

3

SEALED

Felix and Barbosa-Castaneda during the NMSP traffic stop in June 2014.

9. On December 15, 2014, there was an operation involving the use of two undercover agents, one from FBI (hereinafter, "UCE1") and one from NMSP (hereinafter, "UCE2"). They were deployed in an undercover vehicle containing a hidden compartment in the rear of the vehicle under the carpeting and outfitted with several air fresheners, which are commonly used to mask the smell of narcotics, and a digital scale of the type often used to weigh narcotics. The undercover agents were directed to drive in the area of Colfax County, particularly the Town of Cimarron, where Sandoval is known to patrol. FBI provided the undercover agents with $8000 in cash to be used in the operation. At approximately 4:40 p.m., Sandoval conducted a traffic stop for speeding on a vehicle occupied by the undercover agents on United States Highway 64 near the intersection with New Mexico State Road 58. During the traffic stop, Sandoval requested and received a vehicle registration for the undercover vehicle. He did not return it to the undercover agents at the end of the traffic stop.

10. During the traffic stop, the undercover agents spoke with Sandoval almost exclusively in Spanish. Sandoval searched the vehicle and found the hidden compartment in the rear. He also found and seized the scale. At one point, Sandoval placed the UCE1 in the back of the Subject Vehicle. UCE1 then heard Sandoval make a phone call. During this call, Sandoval told the receiving party, in sum and substance, that dispatch did not know he was out on a traffic stop. Sandoval then asked the receiving party to say that he was an agent with the DEA. Sandoval then handed UCE1 the cellular telephone, and UCE1 saw the receiving party identified as "Leon Herrera" (hereinafter, "Herrera"). UCE1 heard Herrera tell him that Herrera was with the DEA. UCE1 observed that the wireless phone that Sandoval handed to him was a smartphone. During the traffic stop, UCE1 also observed Sandoval use this smartphone to take

4

a photograph of UCE1.

11. Herrera was known to be the Springer Police Chief as of March 2014 according to a published news article in the Sangre de Cristo Chronicle. I've been informed more recently by NMSP that Herrera is currently unemployed based on a recent interview with him.

12. According to phone records obtained from AT&T, a telephone subscribed to "Dorene Herrera" (telephone number 505-652-8151) had a phone conversation lasting approximately 11 minutes with telephone number (505) 652-6948, around the time of this traffic stop. According to public records, Sandoval used this phone number in connection with his candidacy for Colfax County Sheriff in 2014.

13. Deputy Sandoval then searched the vehicle and again placed a call to Herrera. He again handed the phone to UCE1, and Herrera told UCE1 that the cash found by Sandoval would be seized by Sandoval. After Sandoval seized the cash and finished the phone call, he spoke with UCE1. Before doing so, UCE1 observed that Sandoval turned off his in-car camera as well as the recorder worn on his uniform. Sandoval then told UCE1, in sum and substance, that he wanted to be a part of the criminal narcotics activity UCE1 was involved in and would let him pass through the area undisturbed with money and/or drugs in the future if they provided him with a portion of the profits. Sandoval then returned $500 in cash to UCE1 and kept the remaining $7,500. The undercover agents then departed the area.

14. Surveillance units followed Sandoval in the Subject Vehicle from this traffic stop to a Cimarron convenience store/Shell gas station. Sandoval went inside the store. Several minutes later, Sandoval emerged from the store, got into the Subject Vehicle and headed east. Surveillance temporarily lost contact with Sandoval, but approximately 30 minutes later, Captain Wagoner found the Subject Vehicle was parked in the driveway of Sandoval's residence.

According to a work schedule for the Colfax County Sheriff's Department, Sandoval was on duty at the time Captain Wagoner observed his patrol unit parked at his home.

15. On January 25, 2015, there was another operation involving the same two undercover agents, UCE1 and UCE2. They were deployed in the same undercover vehicle and were directed to drive in the area of Colfax County, particularly Interstate 25, where Sandoval is known to patrol. I participated in the surveillance for this operation and discussed the operation with other investigators, including UCE1 and UCE2. FBI provided the undercover agents with $7000 in cash to be used in the operation. At approximately 10:30 a.m., Sandoval conducted a traffic stop for speeding on the vehicle occupied by the undercover agents on Interstate 25 near mile marker 408.

16. During the traffic stop, Sandoval placed both undercover agents in handcuffs and in the back of the Subject Vehicle. Sandoval searched the undercover vehicle without asking for consent. Sandoval offered to help them by providing information on where other marked patrol officers were located to avoid detection and Sandoval offered to escort drug loads to the Colorado/New Mexico border and to escort vehicles with large sums of United States currency traveling south on Interstate 25. In return for his help, Sandoval said he wanted 5% of the bulk cash going south to Mexico.

17. UCE1 told Sandoval that he/she agreed to Sandoval's terms. Sandoval advised UCE1 to text Sandoval when UCE1 was ready to use Sandoval's services. Sandoval mentioned to UCE1 that DEA wanted to keep the undercover vehicle because it had an aftermarket compartment of the type commonly used to conceal illegal drugs and drug proceeds. Sandoval agreed to let UCE1 keep the vehicle in exchange for $2000. Sandoval took $2000 from the $7000 in cash he removed from UCE1 at the beginning of the traffic stop, then gave the

remaining $5000 back to UCE1 along with a bracelet of "Jesus Malverde," who many drug traffickers consider a "patron saint" of drug trafficking. The undercover agents then departed the area.

18. Surveillance units followed Sandoval in the Subject Vehicle after this traffic stop. Sandoval headed south on Interstate 25, then eventually turned around to head north on Interstate 25. Sandoval drove to Raton, New Mexico and went to the Colfax County Sheriff's Office at 1413 South Second Street, Raton, New Mexico. Approximately 25 minutes later, Sandoval drove to a Conoco gas station, then a residence in Raton where he was observed talking to an unidentified male, then to El Matador restaurant, and then he headed home, where FBI SA Tracy Kneisler and NMSP Sergeant Matthew Martinez observed the Subject Vehicle in the driveway. Again, this occurred during a time when Sandoval was on duty.

19. On January 26, 2015, there was another operation involving a different undercover agent (hereinafter, "UCE3") driving a different undercover vehicle. I participated in the surveillance of this operation and discussed the operation with other investigators, including UCE3. UCE3 was deployed to drive in the area of Colfax County, particularly Interstate 25, where Sandoval is known to patrol. FBI provided UCE3 with $5000 in cash to be used in the operation. At approximately 10:15 a.m., Sandoval conducted a traffic stop for speeding on the vehicle occupied by the undercover agent on Interstate 25 just south of mile marker 412.

20. During the traffic stop, Sandoval placed UCE3 in the back of the Subject Vehicle. Sandoval searched the undercover vehicle without obtaining consent. Sandoval spoke to UCE3 about working together in the future. Sandoval said he could assist UCE3 by providing information concerning other law enforcement officers present within Sandoval's jurisdiction, i.e., Colfax County, when the undercover agent drove with bulk cash loads. Sandoval also

7

SEALED

indicated he could help escort UCE3 through his area of jurisdiction. Sandoval provided UCE3 with a small piece of paper with Sandoval's cellular telephone number written on it, (575) 447-2264. Prior to departing, UCE3 asked Sandoval if all the money was there. Sandoval initially said it was, but then confessed he had taken $1000. Sandoval returned the $1000, then UCE3 counted the money and found all $5000 was accounted for. UCE3 then departed the area.

21. In February 2015, investigators obtained subscriber records from Plateau for the telephone with telephone number (575) 447-2264. According to these records, this phone is a Nokia 2720 wireless phone subscribed to "Colfax Count[y] Department".

22. During the traffic stop, Sandoval told UCE3 that he had "friends" who "run drugs north and big money south." UCE3 asked him how he could have such friends if he was a "cop". Sandoval replied by laughing.

23. Following this traffic stop, surveillance followed Sandoval in the Subject Vehicle. He drove south on Interstate 25, then cut across the median to merge with northbound traffic on Interstate 25. Sandoval set up to watch traffic in the median of Interstate 25 near mile marker 412. After approximately 35 minutes, Sandoval headed north on Interstate 25, then got off on exit 419 and headed west on New Mexico State Road 58. Sandoval pulled into the Cimarron Post Office, then drove home, parked in his driveway, as observed by NMSP Sergeant Matthew Martinez.

24. On February 9, 2015, UCE3 contacted Sandoval via text message at the cellular phone number (575) 447-2264, Sandoval provided to UCE3 on January 26, 2015. UCE3 asked, in sum and substance, if Sandoval was ready to do some work. Sandoval replied, in sum and substance, for UCE3 to let him know when. They agreed to talk via telephone soon. On February 10, 2015, UCE3 called Sandoval and informed Sandoval that UCE3 would be in his area,

SEALED

meaning Colfax County, near the end of the month. Sandoval told UCE3 he was working Fridays through Tuesdays all month. UCE3 told Sandoval UCE3 would have product, meaning drugs, on him/her when UCE3 drove through Colfax County.

25. On February 19, 2015, via a text message, Sandoval told UCE3 he would be working nights that weekend and that if UCE3 saw him to stop and say hello. On February 20, 2015, UCE3 called Sandoval and asked if Sandoval was going to help UCE3 out. Sandoval said he would. On February 23, 2015, Sandoval sent UCE3 a text message saying he could still work Saturday and if UCE3 still needed Sandoval's help, to let Sandoval know.

26. On February 28, 2015, there was an operation involving UCE3 driving the same undercover vehicle that was driven on January 26, 2015. I participated in the surveillance of this operation and discussed the operation with other investigators, including UCE3. UCE3 and Sandoval had agreed to meet at the Wagon Mound exit off Interstate 25, south of Colfax County. At approximately 4:40 p.m. UCE3 and Sandoval met at the Wagon Mound exit. Sandoval got into the undercover vehicle with UCE3 and UCE3 showed Sandoval the cocaine (two kilos of actual cocaine and three kilos of "sham" cocaine) that UCE3 was transporting. UCE3 paid Sandoval $5000 in cash, with the promise to pay the other half upon reaching the Colorado/New Mexico border. Sandoval told UCE3 to drive 75 to 77 miles per hour and Sandoval would follow approximately two car lengths behind UCE3 in the Subject Vehicle. Sandoval and UCE3 agreed to pull over at exit 460, at the northern border of Colfax County, so UCE3 could pay Sandoval the other $5000. Some surveillance units observed UCE3 depart Wagon Mound and head North on Interstate 25 with Sandoval following approximately two car lengths behind. At exit 460, UCE3 and Sandoval got off the exit and drove along the frontage road until they crossed into Colorado. At the rest area, UCE3 and Sandoval parked, then Sandoval got out of the Subject

Vehicle and in the undercover vehicle. UCE3 paid Sandoval the other $5000. Shortly thereafter, Sandoval departed the rest area in the Subject Vehicle and headed south on Interstate 25. Surveillance followed Sandoval from exit 460 and found he went to the Colfax County Sheriff's Office, then McDonald's, then he drove to his home in Cimarron, New Mexico, where SA Kneisler and NMSP Sergeant Martinez were conducting surveillance.

### D. Request for Sealing

27. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal activity as not all of the targets of this investigation have been arrested or otherwise informed of this investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

### E. Conclusion

28. Based on the facts related above, my training and experience, and the training and experience of agents and investigators involved in this investigation, I believe that there is probable cause to search the Subject Vehicle for evidence of violations of 18 U.S.C. 242, deprivation of civil rights; 18 U.S.C. § 641, theft of government property; 18 U.S.C. § 1951(a), extortion under color of official right; and 21 U.S.C. § 846, attempt to possess with intent to distribute cocaine.

WHEREFORE, I respectfully request the Court issue a warrant authorizing a search of the Subject Vehicle. I also request that the warrant and order authorize members of the FBI, and

SEALED

other authorized law enforcement agents acting under the direction of the FBI, to execute the search warrant. I further request this Affidavit, Application, and the Court's Warrant be placed under seal. I declare under penalty of perjury the statement above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Karen Greene
Special Agent
FBI

Subscribed and sworn to before me
on March 10, 2015:

_____
UNITED STATES MAGISTRATE JUDGE

11

SEALED

## Attachment A

The property to be searched is a marked Colfax County Sheriff's Department automobile, specifically a white 2014 Ford Explorer with New Mexico government license plate 90563 and vehicle identification number 1FM5K8AR3EGB19778 (hereinafter, the "Subject Vehicle").



SEALED

## Attachment B

All evidence at the location described in Attachment A that relates to violations of 18 U.S.C. 242, deprivation of civil rights; 18 U.S.C. § 641, theft of government property; 18 U.S.C. § 1951(a), extortion under color of official right; and 21 U.S.C. § 846, attempt to possess with intent to distribute cocaine, including:

1) controlled substances, such as marijuana and cocaine;

2) paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices, and dilutants such as mannitol, mannite, and vitamin B12;

3) books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances;

4) personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances;

5) cash, currency, and records relating to controlled substances income and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers, as well as precious metals such as gold and silver, and precious gems such as diamonds;

6) vehicle registration belonging to vehicles other than the Subject Vehicle;

7) dash camera, lapel, belt and other recordings from June 1, 2014, to the present.

